# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| 2233 PARADISE ROAD, LLC<br>DBA CASH FACTORY USA,<br><br>Plaintiff,<br><br>v.<br><br>L. FRANCIS CISSNA AND JOHN F. KELLY,<br><br>Defendants. | Case No. 17-cv-01018-APG-VCF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 16, 20) |

Plaintiff 2233 Paradise Road, LLC d.b.a. Cash Factory USA (Cash Factory) sues defendants L. Francis Cissna, Director of U.S. Citizenship and Immigration Services (USCIS) and John F. Kelly, former Secretary of Homeland Security,[1] under the Administrative Procedure Act (APA). Cash Factory sought to hire Songhua Hu as its new Chief Operating Officer (COO). *Id*. Because Hu is a Chinese national, Cash Factory applied for an "H-1B visa" on Hu's behalf. USCIS denied the petition, so Cash Factory appealed to the Administrative Appeal Office (AAO), which affirmed the denial of the petition.

Cash Factory now seeks review of the agency's decision. It claims that USCIS acted arbitrarily and capriciously by denying the petition based on an impermissibly narrow reading of the law. ECF No. 16 at 19-24. USCIS responds that the AAO's decision was reasonable in light of the inconsistencies and discrepancies in the record, and that Cash Factory failed to prove that Hu's position required a specialty degree. ECF No. 20 at 12-19. Both parties move for summary judgment. Because USCIS did not arbitrarily and capriciously deny Cash Factory's visa petition, I deny Cash Factory's motion and grant USCIS's motion.

---

[1] I refer to the defendants collectively as USCIS.

## I. BACKGROUND

Cash Factory is a Nevada limited liability company that also does business in California, Missouri, Texas, and Utah. Certified Administrative Record (CAR) 100. Its business activities include payday loans, title loans, installment loans, check cashing, money orders, prepaid debit and credit cards, prepaid phone cards, and gold purchasing. *Id*. Cash Factory seeks to hire Hu as its COO. *Id*. Hu is a Chinese national who worked for consumer lending company Santander Consumer USA under an H-1B visa[2] prior to accepting Cash Factory's employment offer. CAR 104.

On January 30, 2015, Cash Factory filed a petition with USCIS to hire Hu and extend his H-1B status for three years. CAR 78-105. H-1B status is available for a "specialty occupation," so the employer must present evidence demonstrating that the position requires a "specialty degree" or its equivalent. 8 U.S.C. § 1101(a)(15)(H)(i)(b). Cash Factory's petition included the COO's job description and list of duties, as well as proof of Hu's qualifications. CAR 102-105. Cash Factory showed that Hu has a doctorate in Philosophy and a Master of Management and Business Administration (MBA) with focuses in finance, entrepreneurship, and marketing. CAR 104. To support its argument that an MBA is a "specialty degree" under the INA, Cash Factory relied on the Department of Labor's Occupational Outlook Handbook's definition of a "top executive," which recognizes that "many" top executives have a bachelor's or master's degree in business administration. CAR 103. Cash Factory further explained that Hu has prior relevant work experience at Google, Inc., McKinsey & Company, Enova Financial, Think Finance, and Santander Consumer USA. *Id*.

In response to Cash Factory's petition, USCIS issued a Request for Evidence (RFE), which included a detailed list of additional evidence that would satisfy the criteria to qualify the position as a specialty occupation. CAR 255-258. Cash Factory responded to the RFE with a

---

[2] An H-1B visa is issued under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(15)(H)(i)(b), and allows U.S. employers to hire foreign workers in specialty occupations.

2

revised list of job duties and additional documentation, including job descriptions of similar jobs in the lending industry, biographies of executive employees at other lending companies, and an organizational chart detailing Hu's proffered place in the organization. CAR 264-267. Cash Factory also asserted that the company required a bachelor's degree or equivalent for executive officers and that the COO position required an MBA degree. *Id*.

USCIS denied the petition because Cash Factory failed to produce sufficient evidence to establish that the COO position required a specialty degree. CAR 71-74. Cash Factory appealed that decision to the Administrative Appeals Office (AAO), which affirmed USCIS's denial. CAR 63-67. The AAO found that the record contained so many inconsistencies and discrepancies that the agency could not determine whether the COO position met the regulatory requirements for a specialty occupation. CAR 61. The AAO also agreed with USCIS's determination that an MBA was a "general-purpose" degree that did not qualify as a "specialty degree" under the applicable regulations. CAR 61-63. Cash Factory moved to reopen and reconsider the decision but the AAO denied the motion. CAR 2, 13.

Cash Factory filed this lawsuit under the APA seeking review of the agency's decision. ECF No. 16 at 1-2. It now moves for summary judgment, arguing that its COO position qualifies as a specialty occupation under 8 U.S.C. § 1184(h)(2) (which defines "specialty occupation" for H-1B visas) and 8 C.F.R § 214.2(h)(4)(iii), and that the government acted arbitrarily and capriciously by denying Cash Factory's petition. ECF No. 16 at 7. Cash Factory asks me to vacate the AAO's decision and either grant the petition or remand this matter with instructions to grant the petition and reinstate Hu's lawful status in the U.S. retroactively to January 30, 2015. *Id*. at 33.

USCIS responds that Cash Factory cannot meet its burden to show that the AAO's decision was "arbitrary and capricious" or contrary to law. ECF No. 20 at 1-2. USCIS also moves for summary judgment, arguing that it considered all of the submitted evidence and made a rational decision that was consistent with established policy and precedent. *Id*. at 23.

## II. DISCUSSION

### A. APA Standard of Review

Final agency actions are subject to judicial review under the APA. 5 U.S.C. § 704. An AAO decision on a visa petition is a final decision. *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009). Because the AAO's denial of Cash Factory's appeal was the agency's final decision, I review only that decision.[3]

Under the APA, I review the agency's decision using an abuse of discretion standard. *Kazarian v. U.S. Citizenship & Immigration Servs.*, 580 F.3d 1030, 1033 (9th Cir. 2009). I may reverse an administrative agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). I may not reverse an agency action when the agency is able to show a "rational connection between the facts found and the conclusions made." *Native Ecosystems Council v. U.S. Forest Service*, 418 F.3d 953, 960 (9th Cir. 2005) (quoting *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs,* 384 F.3d 1163, 1170 (9th Cir. 2004)). My role is not to substitute my own judgment for an agency's. *Cal. Wilderness Coal. v. U.S. Dept. of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011). Rather, I should "affirm the agency action if a reasonable basis exists for its decision." *Id.* (quoting *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.,* 475 F.3d 1136, 1140 (9th Cir. 2007)). The standard is "highly deferential" to the regulatory agency's decision, *id.*, and is "especially deferential in the context of immigration policy." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997).

### B. Specialty Occupation Educational Requirements

For a position to qualify as a specialty occupation, it must meet the requirements described in the INA and the Department of Homeland Security's regulations. The burden of

---

[3] The parties extensively briefed USCIS's initial reasons for denying Cash Factory's petition. Cash Factory argues that its petition meets three of the regulatory criteria for a specialty occupation listed in 8 C.F.R § 214.2(h)(4)(iii). The AAO did not address those arguments when it affirmed USCIS's denial because it found that Cash Factory did not meet the prerequisite statutory educational requirements for an H-1B visa. Because I review only the AAO's final decision, I do not consider those arguments.

proof is on the petitioning employer to demonstrate by a preponderance of the evidence that the beneficiary is eligible to receive a visa. 8 U.S.C. § 1361; *see also Glob. Fabricators, Inc. v. Holder*, 320 F. App'x 576, 578 (9th Cir. 2009) (applying this burden to H-1B applications). A specialty occupation requires both the "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(h)(i). The required degree must be in a specific specialty related to the occupation the beneficiary will perform. 8 C.F.R. § 214.2(h)(4)(ii). A position requiring a business administration degree does not constitute a specialty occupation because a business administration degree is a "general-purpose" degree. *See, e.g., Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 147 (1st Cir. 2007) (explaining that USCIS and courts have consistently found that requiring a general-purpose degree in business administration will not qualify a position as a specialty occupation); *Irish Help at Home LLC v. Melville*, 13-cv-00943-MEJ, 2015 WL 848977, at *5 (N.D. Cal. Feb. 24, 2015), *aff'd*, 679 F. App'x 634, 634 (9th Cir. 2017).

The AAO's primary reason for affirming the denial of Cash Factory's petition was that the educational requirements for the COO position failed to establish that the position qualified as a specialty occupation. CAR 62. For a position to qualify as a specialty occupation, it must require a degree in a specific specialty related to the position. 8 C.F.R. § 214.2(h)(4)(ii); *see also Royal Siam*, 484 F.3d at 147. The AAO noted that Cash Factory provided inconsistent information regarding the degree requirements for the COO position. CAR 61-62. In its initial petition, Cash Factory stated that a bachelor's degree was the minimum requirement for the COO position, without specifying that a degree in a specific specialty was required. CAR 103. In Cash Factory's response to the RFE, however, it suggested that a business administration degree was required for the position. CAR 266. Although Cash Factory provided inconsistent information regarding the degree requirement for the position, the AAO explained that neither explanation satisfied the requirements for a specialty occupation because a general-purpose degree such as a business administration degree does not qualify as a "specialty degree." CAR 62. The AAO

5

found that Cash Factory failed to provide evidence that the COO position required a precise and specific course of study relating to the position. *Id*. Therefore, the AAO concluded that Cash Factory's petition should be denied on the basis that the COO position could be performed by an individual with a general-purpose degree. *Id*.

Cash Factory contends that it satisfies the criteria for a specialty occupation because its job listing required a candidate who had an MBA degree with a specialty focus. ECF No. 16 at 23. Cash Factory also disagrees with USCIS's position that a business administration degree is a general-purpose degree and argues that USCIS is "out of touch with today's educational options in the advanced study of Business Administration." *Id*. It further emphasizes that employers commonly fill executive positions with candidates who have an MBA with expertise in a specific field and that Hu has expertise in the areas of business strategy management, derivative markets research, finance, advertising, and managerial leadership. *Id*. Cash Factory further states that specialized knowledge of finance and business management is required for the COO role. ECF No. 16 at 21.

The AAO acted reasonably when it determined that Cash Factory's educational requirements did not qualify the position as a specialty occupation. A company's stated desire to hire a person with certain qualifications does not prove that the position requires a person who possesses those qualifications. Cash Factory's assertion that the COO position required specialized knowledge of business and finance does not demonstrate that the COO position required a degree in a specific specialty. And courts and the agency have consistently made clear that a position requiring a business administration degree does not constitute a specialty occupation because a business administration degree is a "general-purpose" degree. *Royal Siam* 484 F.3d at 147; *see also Irish Help*, 2015 WL 848977, at *5. Cash Factory has not demonstrated that the AAO's interpretation of the applicable statutory and administrative guidelines was impermissible. The AAO thus reasonably concluded that Cash Factory failed to show that a degree in a specific specialty was required for the COO position.

**C.     Inconsistencies and Discrepancies in the Record**

When inconsistencies are present in the record, the petitioner bears the burden of presenting "independent and objective evidence" to show the truth. *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 (9th Cir. 2008). The Ninth Circuit has rejected APA challenges to agency actions when petitions for immigration benefits contain "numerous errors and discrepancies." *See Spencer Enters., Inc. v. U.S.*, 345 F.3d 683, 694 (9th Cir. 2003). Additionally, the presence of numerous discrepancies in a petition can cast doubt on its credibility. *See id.* at 694 (holding that an investment visa petition with numerous discrepancies cast doubt on the credibility of the proposed business plan).

The AAO's second reason for affirming USCIS's denial of Cash Factory's petition was that the inconsistencies and discrepancies in Cash Factory's evidence prevented the AAO from determining the nature and scope of the work Hu would perform. CAR 60-63. The AAO pointed out specific discrepancies in Cash Factory's explanation of the nature of the COO position, as well as the nature of Cash Factory's business itself. CAR 59-61.

**1.     The Nature of the Proffered Position**

The AAO concluded that Cash Factory's evidence was insufficient to establish the substantive work that Hu would perform. CAR 59-63. In the May 20, 2015 letter submitted with its petition, Cash Factory stated that the COO position was vacant and that the closest equivalent position in the company was the joint position of Chief Executive Officer (CEO) and Chief Legal Officer (CLO). CAR 266. However, Melissa Lambson was under contract as the COO when Cash Factory submitted the letter. CAR 34-38. This inconsistency created doubts that Hu would work as COO and prevented the AAO from determining the substantive nature of the work Hu would be performing. CAR 61.

In its motion to reconsider before the AAO, Cash Factory suggested that Lambson was the COO at the time of the filing but "was not qualified to handle the evolution of the company." CAR 6. It claimed that it initially sought to hire three executives but that Hu could take on the responsibilities of all three positions as COO. CAR 19. Cash Factory supported this claim with

7

evidence of a contract with an executive recruiter showing that it had contracted with the recruiter to fill three executive positions. CAR 42-48.

The AAO did not act arbitrarily and capriciously in determining that it was unclear whether Hu would be working as COO and what work he would be doing at Cash Factory. The burden is on Cash Factory to resolve inconsistencies in the record. *See Love Korean Church*, 549 F.3d at 754. After reviewing the record, including the inconsistencies in Cash Factory's explanations regarding the status of the COO role, the AAO did not act arbitrarily and capriciously in deciding that Cash Factory had not met this burden. Although the contract with an executive recruiter shows that Cash Factory sought to hire three executives, this does not demonstrate that Hu would be assuming the duties of all three positions. These inconsistencies are enough to cast doubt on the credibility of Cash Factory's explanations. *See Spencer Enters.*, 345 F.3d at 694. Whether or not Cash Factory's explanation is accurate, there was a "rational connection between the facts found and the conclusions made" by the AAO. *See Native Ecosystems Council*, 418 F.3d at 960. The AAO therefore acted reasonably in holding that these inconsistencies prevented it from determining the nature of the work Cash Factory expected Hu to perform.

### 2. The Nature of Cash Factory's Business

The AAO also noted significant discrepancies regarding the nature of Cash Factory's business, which further prevented the AAO from determining the nature of the work Hu would be performing. CAR 59-60. Cash Factory's petition stated that it had 55 employees, but it presented W-2 records showing 32 employees and an organizational chart showing 11 employees. CAR 60. The AAO noted that Cash Factory's total salary payments of only $288,945 appeared insufficient to pay the wages of even 11 employees. *Id*. The AAO also pointed out evidence showing that Cash Factory was operating at a loss despite Cash Factory's representations that it had experienced "healthy growth" since its inception. CAR 60. The AAO thus concluded that Cash Factory failed to prove that it needed Hu's services and questioned

8

whether Cash Factory would be able to pay him the stated wage of $180,000 plus a $50,000 bonus. *Id*.

Cash Factory contends that the AAO impermissibly relied on Cash Factory's small size when rejecting the petition. ECF No. 23 at 13. It states that the number of employees in the company is immaterial to the question of whether the COO position qualifies as a specialty occupation. *Id*. at 11. Cash Factory also argues that its operating at a net revenue loss is irrelevant because many large corporations operate at a net revenue loss and are able to pay their executives high salaries. *Id*.

The AAO acted rationally in doubting that an organization that paid less than $300,000 in annual salaries and was operating at a loss would have the need or means to hire an executive with an annual wage of $180,000 and a bonus of $50,000. And while the small size of a company does not disqualify it from sponsoring a worker for H-1B status, it can be used to evaluate the nature of the duties of a position. *See EG Enters., Inc.* v. *Dep't of Homeland Sec.*, 467 F. Supp. 2d 728 (E.D. Mich. 2006). Therefore, the inconsistencies and discrepancies regarding Cash Factory's size and profitability reasonably prevented the AAO from determining whether the proffered position qualified as a specialty occupation, and whether Cash Factory would be able to employ Hu as an executive with the proposed compensation.

**D.    Due Process**

In its complaint, Cash Factory raises the question of whether USCIS's denial violated its due process rights, but provides no further elaboration. ECF No. 1 at 5. USCIS contends that Cash Factory provided no facts or allegations to support this claim. ECF No. 20 at 23. Cash Factory claims that USCIS's failure "to provide adequate explanation or criteria to support its requests for evidence or to justify its action in denying" the petition constitute due process violations. ECF No. 23 at 15. Cash Factory cites to cases relating to removal and procedural issues that do not pertain to work visa petitions. ECF No. 23 at 15-16 (citing *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1165 (9th Cir. 2004) (relating to the privilege of voluntary departure in lieu of removal) and *Munoz v. Ashcroft*, 339 F.3d 950, 954-956 (9th Cir. 2003) (relating to

ineffective counsel and equitable tolling)). Because USCIS provided adequate bases to deny the petition, Cash Factory's due process claim fails.

### III. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Cash Factory's motion for summary judgment **(ECF No. 16) is DENIED** and defendants L. Francis Cissna and John F. Kelly's motion for summary judgment **(ECF No. 20) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the defendants and against the plaintiff.

DATED this 3rd day of July, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE